IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-10003

Summary Calendar

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

MICHAEL ANTHONY JACKSON

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Northern District of Texas
(5:95-CR-012-C)

_____

December 19, 1996

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Defendant Michael Anthony Jackson appeals his conviction and sentence for receipt of money stolen from a bank, giving false statements to an agent of the United States, harboring a fugitive, and being an accessory after the fact to a bank robbery.

I.

Originally, Jackson's indictment also included a count for aiding and abetting bank robbery. While the jury was deliberating,

_____

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

the district court granted Jackson's unopposed motion and dismissed the robbery count.  After consulting with the parties, the court instructed the jury to infer nothing from the fact that the robbery count was no longer before them.  The jury found Jackson guilty on the remaining counts.

Jackson argues that the district court committed plain error by not sua sponte declaring a mistrial after dismissing the robbery count.  Because Jackson did not object to the dismissal or the court's instructions to the jury, we review for plain error. We will correct a forfeited error only if (1) there was error (2) that was clear or obvious and (3) the error affects Jackson's substantial rights.  United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc).  Initially, we find nothing to support his assertion that "the jury was deluged with gory, violent evidence of a robbery that involved a cold-blooded murder." Rather, although the bank president and one of the robbers testified to the details of the bank robbery, no "gory details" were given regarding the subsequent murder, and the record contains no photographic or other evidence as a trial exhibit. Furthermore, Jackson was charged with and convicted of receiving money stolen from a bank--a charge that, like the accessory charge, required proof that the money was stolen from a bank.  Since the evidence was relevant to both charges, Jackson has not shown the district court committed any error, plain or otherwise, by not declaring a mistrial following Jackson's motion to dismiss the robbery charge.

2

Jackson argues that his conduct under all the counts, properly grouped under U.S.S.G. § 3D1.2 because they involve the same harm, should have been limited to a base level of 20 under § 2X3.1. Under § 3D1.3, the base offense level for grouped counts is determined by the highest offense level for the counts in the group. Jackson was convicted of being an accessory-after-the-fact, the base offense level of which is

> 6 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 30. *Provided*, that where conduct is limited to harboring a fugitive, the offense level shall not be more than level 20.

§ 2X3.1 (emphasis original). The underlying offense for which Jackson was convicted for being an accessory--bank robbery involving a murder--carries a base level of 43. § 2B3.1 (bank robbery); § 2A1.1 (murder). The base level was thus appropriately 30, unless Jackson's "conduct is limited to harboring a fugitive." The evidence supporting Jackson's conviction for being an accessory after the fact also supports his harboring conviction. However, Jackson did more than merely house the fugitive, he also lied to Agent Powell about the fugitive's whereabouts and the last time he saw the fugitive, and he received a box of stolen money from the robbery. Jackson ignores his convictions for these acts, which involve conduct outside that contemplated by "harboring a fugitive." The district court did not err in finding that

3

Jackson's conduct constituted more than mere harboring a fugitive under § 2X3.1.

III.

Finally, Jackson protests the two-level increase applied to his offense level at sentencing for obstruction following the district court's finding that he committed perjury during the trial. Section 3C1.1 of the guidelines provide a two-level enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." It is proper for the sentencing court "to enhance a defendant's sentence for obstruction of justice where the defendant committed perjury by giving false testimony at trial." U.S. v. Laury, 985 F.2d 1293, 1308 (5th Cir. 1993); § 3C1.1 comment n.3(b). We review the district court's finding for clear error. Id.; U.S. v. Storm, 36 F.3d 1289, 1295 (5th Cir. 1994). Perjury requires a witness testifying under oath or affirmation giving false testimony concerning a material matter with the willful intent to provide false testimony. United States v. Cabral-Castillo, 35 F.3d 182, 186 (5th Cir. 1994), cert. denied, 115 S.Ct. 1157 (1995); U.S. v. Dunnigan, 113 S.Ct. 1111, 1116 (1993). The district court enhanced the sentence for Jackson's testimony "concerning the telephone conversation he had with Agent Powell." Jackson testified that he told Powell he thought he knew where the fugitive was, while Powell testified that Jackson told him he had a phone number for

4

"Fettner"--supposedly a friend of the fugitive's the agent might want to contact. In fact, the fugitive had been at Jackson's house until he was arrested by Powell several hours before this conversation. Putting aside the question of whether this conflict in testimony constitutes a falsehood sufficient for a perjury conviction, it was not <u>material</u> to the trial as required by <u>Cabral-Castillo</u>. Since the district court did not analyze how this "false" testimony was material, we examine the issue anew assuming the district court implicitly determined the issue of materiality. False testimony is "'material' if it is 'designed to substantially affect the outcome of the case.'" <u>Cabral-Castillo</u>, 35 F.3d at 187. If the "false" testimony is such that, even if the jury believed it, it could not influence or affect the outcome of the case because it has no bearing on the defendant's guilt or innocence, it is not material. <u>Id.</u> Jackson's testimony concerning what he was or was not going to tell Agent Powell about the fugitive's whereabouts was not the subject of the lying-to-the-United-States-agent charge, or any other charge in the indictment. Thus, it did not have a bearing on Jackson's guilt or innocence. As the testimony was not "designed to substantially affect the outcome of the case," it was not material, and can support no sentence enhancement. <u>Id.</u>

For the reasons set forth above, Jackson's convictions for receipt of money stolen from a bank, giving false statements to an agent of the United States, harboring a fugitive, and being an

5

accessory after the fact to a bank robbery are in all respects AFFIRMED. However, Jackson's sentence is VACATED and this case is REMANDED to the district court for resentencing.